IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ADANE ABEGAZ,** | * | |
| *Plaintiff*, | * | |
| v. | * | Case No. 8:24-cv-01449-GLS |
| **U.S. CUSTOMS AND BORDER PATROL,** | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant, the United States of America, on behalf of its Agency, the United States Customs and Border Patrol ("Defendant" or "CBP"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(1), (6) and 56, Local Rule 105, and this Court's September 17, 2024 Order (ECF No. 17), files this Memorandum of Law in Support of its Motion to Dismiss or, in the Alternative, for Summary Judgment, and states:

**INTRODUCTION**

Plaintiff filed this Freedom of Information Act, 5 U.S.C. § 522 ("FOIA"), matter alleging that CBP that failed to timely respond to his request for records concerning "his entries and exits, apprehensions, detentions, and interactions with the Agency," which he needs for a purely personal reason: to "prepare an application to adjust his immigration status through a spousal petition." ECF No. 1, ¶ 2. This aspect of Plaintiff's claim should be dismissed as moot because CBP produced the responsive records on June 10, 2024.

As to Plaintiff's request for fees and costs, dismissal is also warranted, or summary judgment should be entered in favor of CBP, because Plaintiff's lawsuit was not reasonably

necessary for CBP to produce the records, nor was it the cause of the CBP's response. The other factors the Court must consider weigh heavily against Plaintiff's fee claim, including the absence of any public interest in the records and the personal (versus public) nature of the request. Accordingly, any fee claim should be resolved in favor of CBP, and the entire matter should be dismissed.

## FACTUAL BACKGROUND

The following are alleged in Plaintiff's Complaint or are not subject to reasonable dispute:

**A.     The Significant Demands on CBP's FOIA Division.**

On March 27, 2023, Plaintiff submitted a request to CBP under FOIA for certain records that he claims he needs to adjust his immigration status. ECF No. 1, ¶¶ 2, 9. CBP's FOIA Division acknowledged receipt of the request by e-mail on October 4, 2023, assigned it a unique tracking number, explained that it processes FOIA requests in the order in which they are received, and noted that, although its "goal is to respond" to any FOIA request "within 20 business days of receipt[,]" it had been receiving an "increasing number of FOIA requests[,]" and its "current backlog" was delaying responses by six to nine months. ECF No. 1-1, p. 1.

CBP's FOIA response time was – and remains -- affected by the Agency's lack of staff and increasing workload. *See* Affidavit of Patrick A. Howard, Branch Chief, CBP FOIA Division, attached hereto as Exhibit A. Although CBP is a large organization with more than 60,000 employees, as of July 2024, its FOIA Division had only 31 full-time employees, eight FOIA assistants, and five supervisory employees. *Id*., ¶ 12. There were also 12 staff vacancies (over 20%). *Id*. In addition, staff overtime hours were significantly reduced in November 2023, and were only reinstated to previous levels at the end of June 2024. *Id*. While these additional hours are intended to reduce CBP's FOIA processing backlog, the high volume of daily requests means

that clearing the backlog is slow. *Id.* In the last year (October 1, 2023 through June 17, 2024), CBP's FOIA Division received nearly **128,000 FOIA requests**. It also received 222 requests for consultation (*i.e.*, CBP information) from other Agencies, which affects the FOIA Division's workload and ability to quickly respond to FIOA requests. *Id.*, ¶ 17. Using real time data, the FOIA Division anticipates receiving 22% more FOIA requests in this fiscal year than they did in the last fiscal year. *Id.*, ¶ 17.

In addition to the sheer number of FOIA requests, complex FOIA cases and litigation have grown, resulting in an "increased backlog" for FOIA Division staff. *Id.*, ¶ 20. In July 2024, CBP had 129 FOIA cases in litigation, and was obligated by a Court-ordered processing schedule to process 14,000 pages of records *per month*. *Id.*, ¶¶ 21-22. This "continued high number of FOIA requests submitted to the Agency has kept the FOIA Division under considerable stress as its limited FOIA processing staff and resources struggle to keep up with this workload" and has put "unusually high burdens on the Agency's FOIA processing capabilities, both from a systems [and] human-resource perspective." *Id.*, ¶¶ 18, 23.

**B.      CBP'S FOIA Division Has Limited Resources, And It Processed Plaintiff's Request As Quickly As Capable.**

The CBP FOIA Division categorizes FOIA requests as "traveler" or "non-traveler." *Id.*, ¶ 15. A "traveler" request, like Plaintiff's here, seeks records related to the requester's travel (like records of entry into and exit from the United States, I-94 records, and records of inspections and interactions with CBP employees). *Id.* In a typical fiscal year, traveler requests make up 85% of the total volume of FOIA requests CBP handles. *Id.*, ¶ 17. While such requests usually only require "minimal" and/or "routine" redactions, if any, at the time CBP received Plaintiff's FOIA request, there were approximately **144,000 outstanding FOIA requests ahead of his**, and only

40 full-time employees, 18 contractors, and 9 other temporary employees (four full time and five part time) working on FOIA matters. *Id*., ¶ 24.

Though CBP advised Plaintiff on October 4, 2023 that, given its enormous backlog, it would likely need an additional six to nine months to respond to his request, Plaintiff (though counsel) e-mailed CBP just over four months later, on February 7, 2024, to inquire about the status of his request and CBP's response. ECF No. 1-2, p. 2. CBP promptly apologized for the delay, noted that the request was still being processed and that its office had a "significant backlog of FOIA requests," and reiterated that it was "working very hard to clear the FOIA backlog[.]" *Id*. On March 20, 2024, only five months after being advised that it could take CBP up to nine months to respond and about six weeks after his previous e-mail, Plaintiff wrote again, stating that despite having previously engaged with CBP over e-mail, he had "yet to receive any response from CBP." *Id*., p. 1. CBP responded two days later, again apologizing for the delay, and pointing out its significant backlog of FOIA requests. *Id*. Plaintiff filed suit two months later, seven months after CBP had advised that it could take up to nine months to respond to his request.

On June 10, 2024, CBP produced the requested records. Exhibit A, ¶ 25.

**LEGAL STANDARD**

**A.    Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction.**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court must dismiss an action if lacks subject matter jurisdiction. The plaintiff has the burden of proving the Court has jurisdiction, and the Court must make all reasonable inferences in the plaintiff's favor. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003). A challenge to subject matter jurisdiction may be facial, asserting that the allegations in the complaint are insufficient to establish jurisdiction; or factual, asserting that the jurisdictional allegations in the complaint are not true. *Kerns v. United*

*States*, 585 F.3d 187, 192 (4th Cir. 2009).  In a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction[,]" and can look "beyond the pleadings and the jurisdictional allegations" to "whatever evidence has been submitted on the issue" to determine "whether in fact subject matter jurisdiction exists" without converting a motion to dismiss to one for summary judgment.  *Id*.; *Khoury*, 268 F. Supp. 2d at 606.

**B.	Rule 12(b)(6) Motion to Dismiss for Failure to State a Valid Claim.**

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint.  *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  To survive a 12(b)(6) motion, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby nudging the "claims across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  Claims must be dismissed under Rule 12(b)(6) where the plaintiff fails to plead their essential elements beyond mere "labels and conclusions."  *Id*. at 555-56 (plaintiff must allege facts sufficient to "raise a right to relief above the speculative level" such that, when taken as true, they state a viable claim); *Francis v. Giacomelli,* 558 F.3d 186, 193 (4th Cir. 2009) ("[N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief").

While the Court must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co*., 176 F.3d 776, 783 (4th Cir. 1999), the Court need not accept legal conclusions unsupported by facts, *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events.  *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### C.     Rule 56 Motion for Summary Judgment.

Where materials outside of the pleadings are considered, the "motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Summary judgment should be granted if, in view of the evidence in the light most favorable to the nonmoving party, the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). "A fact is material if it might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Id*. at 247–48.

## ARGUMENT

### A.     The Court Lacks Jurisdiction Because the Case is Moot.

"The doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction," *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017), which extends only to actual cases or controversies. U.S. Const. art. III, § 2; *Raines v. Byrd,* 521 U.S. 811, 818 (1997) (describing the limitation of the federal courts' jurisdiction to cases and controversies as a "bedrock" principle fundamental to the judiciary's role in our system of government). When "a case or controversy ceases to exist -- either due to a change in the facts or the law -- the litigation is moot, and the court's subject matter jurisdiction ceases to exist also." *Porter*, 852 F.3d at 363. *Powell v. McCormack*, 395 U.S. 486, 496 (1969) ("a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome"); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been

described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."). Put another way, a case becomes moot "when the claimant receives the relief he or she sought to obtain through the claim." *Friedman's Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002).

In FOIA cases, district courts can grant relief only when an agency has improperly withheld agency records. 5 U.S.C. § 552(a)(4)(B); *West v. Spellings*, 539 F. Supp. 2d 55, 61 (D.D.C. 2008) (under FOIA, "injunctive relief is only available to remedy an agency's improper withholding of information"). Therefore, Courts routinely dismiss FOIA cases as moot when all responsive documents have been produced since there is no justiciable case or controversy. *See, e.g., Misegades & Douglas v. Schuyler,* 456 F.2d 255, 256 (4th Cir. 1972) (explaining that, because appellant was "provided with the [requested] document[,]" there was "no longer any matter in controversy before the court[,]" and the matter was moot); *Office of the Atty. Gen*., 594 F. Supp. 2d 12, 14 (D.D.C. 2009) (dismissing FOIA claim as moot because plaintiff "has already received all of the information to which he is entitled to under the law"); *West*, 539 F. Supp. 2d at 61 ("[o]nce the requested records have been produced there is no longer a case or controversy and the FOIA action becomes moot"); *Crooker v. U.S. State Dep't*, 628 F.2d 9, 10 (D.C. Cir. 1980) ("[o]nce the records are produced, the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made").

This is true no matter how "fitful or delayed the release of information under the FOIA may be[.]" *Worsham v. U.S. Dep't of the Treasury*, 2013 WL 5274358, at *10 (D. Md. Sept. 17, 2013) (citing *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982)). "Once all requested records are surrendered, federal courts have no further statutory function to perform." *Id*.; *Worsham*, 2013

WL 5274358, at *10 (whether the records were produced before or after a lawsuit is filed, the "remedy . . . is the same: access to the documents"); *Shortall v. Baltimore Dist. U.S. Army Corps of Engineers*, 2015 WL 3545259, at *4 (D. Md. June 4, 2015) (same).

Here, CBP produced the record responsive to Plaintiff's request on June 10, 2024. Ex. A, ¶ 25. Thus, as of that date, the "controversy" in Plaintiff's Complaint -- that CBP failed to properly search for and produce responsive records -- no longer existed. *Shortall*, 2015 WL 3545259, at *4. Since Plaintiff's requested relief is for the Court to "enter an Order . . . requiring" CBP to "promptly process Plaintiff's request and search for and disclose the responsive agency records," and CBP "ha[s] voluntarily taken that action," this Court's "ability to grant relief falls away and jurisdiction with it." *Id.* at *4. Accordingly, Plaintiff's request for production is moot, and the Complaint should be dismissed.

**B.      Plaintiff Fails to State a Valid Claim for Fees.**

As to his request for attorney's fees and litigation costs, Plaintiff fails to show his eligibility for the same. ECF No. 1, ¶ 33(b) (asking the Court to enter an Order awarding "costs of suit and reasonable attorney's fees" under FOIA and/or the Equal Access to Justice Act).

FOIA provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). "Substantially prevailed" under FOIA is defined as, relevant here, when "the complainant has obtained relief through [] a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id*. § 552(a)(4)(E)(ii). To receive fees under this prong, Plaintiff must establish that his FOIA claim was "reasonably necessary *and* substantially caused the requested records to be released." *Reinbold v. Evers*, 187 F.3d 348, 363 (4th Cir.1999). This is a question of causation:

to prevail on a fee claim, Plaintiff must show that his lawsuit "resulted in the release of records that would not otherwise have been released." *Id*. Critically, the "mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." *Shortall*, 2015 WL 3545259, at *5; *Reinbold*, 187 F.3d at 363 (Agency's release of records after plaintiff's lawsuit for production did not mean that plaintiff "substantially prevailed" for purposes of fee claim).

In exercising its discretion in deciding a FOIA plaintiff's fee claim, the Court undertakes a "multifarious analysis of several factors," including:

(1) whether the documents released were of general public interest;

(2) any commercial incentive and pecuniary benefit to the complainant;

(3) the nature of the plaintiff's interest in the records sought;

(4) the reasonableness of the government's asserted legal basis for any withholding;

(5) whether the prosecution of the plaintiff's action could reasonably have been regarded as necessary; and,

(6) whether the plaintiff's suit had a substantial causative effect on the delivery of the information.

*Morales v. Pension Ben. Guar. Corp.*, 2012 WL 253407, at *8 (D. Md. Jan. 26, 2012); *Reinbold*, 187 F.3d at 362 n.16. Generally, fees should only be awarded "where doing so will encourage fulfillment of the purpose[] of FOIA" – that is, "to inform the public about the action of government agencies." *Nix v. United States*, 572 F.2d 998, 1003, 1007 (4th Cir. 1978).

These factors weigh heavily against Plaintiff's fee claim. While any FOIA disclosure arguably benefits the public by generally increasing its knowledge about the government, this "broadly defined benefit" is not what Congress had in mind when it provided for an award of fees/costs. Rather, the "public interest" factor permits an award of attorney's fees when the "complainant's victory is likely to add to the fund of information that citizens may use in making

vital political choices." *Texas v. ICC*, 935 F.2d 728, 734 (5th Cir. 1991) (suggesting that there is "little public benefit" in disclosure of documents that fail to reflect agency wrongdoing: "Texas went fishing for bass and landed an old shoe. Under the circumstances, we decline to require the federal government to pay the cost of tackle"); *Loglia v. I.R.S.*, 1997 WL 214869, at *4 (S.D.N.Y. Apr. 25, 1997) (the "most important consideration in determining entitlement to fees in a FOIA case" is arguably "the benefit to the public which is to be derived from the release of information sought").  Here, this factor clearly weighs against an award of fees/costs, since any such award would merely subsidize Plaintiff's interest in a private concern at the expense of the taxpayer. There is nothing about the requested information that discloses government operations or would "add to the fund of information that citizen may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995); *Loglia*, 1997 WL 214869, at *4 (rejecting cost/fee claim because plaintiff's request for personal tax records were of "purely personal interest" and "provide[d] little, if any, benefit to the public").

The cases upon which Plaintiff appears to rely do not compel a different result. ECF No. 16, p. 2.  In *Gahagan v. USCIS*, 2016 WL 1110229, (E.D. La. Mar. 22, 2016), for example, the Court ordered the Government to release ten pages of responsive records that it originally withheld as duplicative. *Id*. at *10.  The Court then awarded attorney's fees to the plaintiff because FOIA was the only method by which the plaintiff could obtain the requested documents and because there was no statutory provision or other law that supported the Government's asserted basis for withholding the material. *Id*. at *13.  In contrast here, CBP voluntarily produced the requested material, though it was delayed by its enormous workload and lack of resources.

*Jarno v. Department of Homeland Sec.*, 365 F. Supp. 2d 733, 737 (E.D. Va. 2005), upon which Plaintiff also relies, ECF No. 16, p. 2, similarly does not advance Plaintiff's cause because

in *Jarno*, the Court found that the plaintiff, who had requested documents for use in his Immigration Court proceeding, nonetheless demonstrated a widespread benefit because the documents "provided information to the public regarding the Department of Homeland Security's handling of Plaintiff's high-profile political asylum case" such that their release would "work[] to preserve the integrity of Immigration Court proceedings." *Id*. at 739. Similarly, in *Hernandez v. U.S. Customs & Border Prot. Agency*, 2012 WL 398328 (E.D. La. Feb. 7, 2012), the plaintiff's FOIA request for general information was intended to reveal "an ongoing pattern of unlawful surveillance and suspicionless raids of immigrant construction workers," which had a larger purpose aimed at benefitting the public. *Id*. at *1. Unlike those cases, Plaintiff here seeks material for his own personal use. His request is purely self-motivated and not intended to raise public awareness of any issues of public import and from which other individuals could benefit. *Jarno* and *Hernandez* are therefore not instructive and should not be used to support Plaintiff's fee claim.

The second and third factors, the commercial benefit to the plaintiff and the nature of the plaintiff's interest in the records sought, also weigh against Plaintiff's fee request. In analyzing these closely related factors, which are "often considered together," the Court must "keep in mind that the FOIA attorney's fee provision was designed to assist potential plaintiffs in overcoming the often-insurmountable obstacle presented by costs and attorney's fees to the average person seeking information under FOIA." *Ellis v. United States*, 941 F. Supp. 1068, 1078-79 (D. Utah 1996); *Lovell v. Alderete*, 630 F.2d 428, 433 n.16 (5th Cir. 1980) (FOIA's "fees award section was intended to encourage complainants who lacked substantial private and pecuniary incentive to pursue their claims").

Here, Plaintiff admits that he had a strong and purely personal interest in the requested information: his desire to adjust his immigration status. ECF No. 1, ¶¶ 2, 9. As several courts

have found, this personal motive this weighs against a fee claim. *See, e.g., Hill Tower, Inc. v. Dep't of Navy*, 718 F. Supp. 568, 572 (N.D. Tex. 1989) (where the potential for private benefit is high, "complainants have sufficient incentive to pursue their claims, thus meeting the policy objectives of fee awards. In such situations the court may properly deny an award of fees"); *Solone v. I.R.S.*, 830 F. Supp. 1141, 1143 (N.D. Ill. 1993) (plaintiffs' private self-interest sufficient to secure vindication of their rights under FOIA).

The fourth factor – the reasonableness of the Government's asserted basis for withholding – also supports denying Plaintiff's fee claim under both FOIA and the Equal Access to Justice Act ("EAJA"). In FOIA cases, "the court will not award fees where the government's withholding had a colorable basis in law but will ordinarily award them if the withholding appeared to be merely to avoid embarrassment or to frustrate the requester." *Solone*, 830 F. Supp. at 1143; *Young v. Dir., C.I.A.*, 1 F.3d 1235 at *3 (4th Cir. 1993) (unpublished) (the Court should "not ordinarily award fees" unless the Government has been "recalcitrant in their opposition to a valid claim or have been otherwise engaged in obdurate behavior"). Similarly, fees are not appropriate under the EAJA when the Government's position is "substantially justified" – that is, has a "reasonable basis both in law and fact." *E.E.O.C. v. Clay Printing Co.*, 13 F.3d 813, 815 (4th Cir. 1994).

Here, CBP has provided sufficient, meaningful, and reasonable justification for its delay in responding to Plaintiff's personal request. Despite receiving an unprecedented number of FOIA requests, CBP undeniably worked diligently, expeditiously, and in good faith given its resource constraints. As documented in Mr. Howard's Affidavit, at the time it received Plaintiff's request, CBP had 40 full-time employees, 18 contractors, and 9 other temporary employees (four full time and five part time) to work on FOIA matters. When Plaintiff submitted his request, there were 144,000 outstanding FOIA requests ahead of his and CBP was exercising due diligence in

processing all requests in as short of time as possible on a first-in, first out basis. *See, e.g., Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976) ("The good faith effort and due diligence of the agency to comply with all lawful demands under the Freedom of Information Act in as short a time as is possible by assigning all requests on a first-in, first-out basis, except those where exceptional need or urgency is shown, is compliance with the Act"). CBP reinstated overtime hours to reduce its FOIA processing backlog, but continues to receive a high volume of daily requests, has 129 FOIA cases in active litigation, and is bound by a Court-ordered processing schedule that requires it to review, make any redactions, and produce 14,000 page per month. Ex. A, ¶¶ 20-22. In short, the short-staffed FOIA Division has been laboring to process the pending – and continuing influx of – FOIA requests, and continued to keep Plaintiff apprised of its progress and estimated response time. ECF Nos. 1-1, 1-2. CBP clearly had a reasonable basis for, and was substantially justified in, delaying its response to Plaintiff's request, and did not engage in the "obdurate behavior" necessary to support a fee award. *Young*, 1 F.3d at *3.

Finally, there is no indication that this lawsuit "could reasonably have been regarded as necessary" or had a "substantial causative effect" on the record production, the final two factors the Court considers in a FOIA fee claim. To show that he is eligible for costs/fees, Plaintiff "must establish a nexus between the commencement of this action and the release of the records." *Loglia*, 1997 WL 214869, at *3. This requires more than simply relying on the *post hoc, ergo propter hoc* logical fallacy. *Pub. L. Educ. Inst. v. U.S. Dep't of Just.*, 744 F.2d 181, 183 (D.C. Cir. 1984).

Though Plaintiff did not receive the requested information until after he filed suit, this does not mean that suit was necessary or that it had any causative effect. Although Plaintiff has concerns about the speed of CBP's response, he cannot change the essential fact that his request was still

under consideration when he filed this lawsuit, and he has no information, other than his own apparent and unsupported belief, that CBP did not intend to produce the requested records. *See generally*, ECF No. 1. As made clear above and in the attached Affidavit, CBP always intended to respond to Plaintiff's "traveler request," but was delayed by its lack of staff and an enormous backlog of FOIA requests. Ex. A, ¶¶ 12, 17, 21-23. CBP kept Plaintiff apprised of its efforts and assured him that his request was being attended to. ECF Nos. 1-1, 1-2. Though Plaintiff may argue that he obtained earlier release of the records because he filed suit, the FOIA provision authorizing lawsuits was not intended to expedite disclosure, and a "litigant [should] not be eligible for fees and costs where records were released as a result of routine, but delayed, administrative processing." *Loglia*, 1997 WL 214869, at *4. An award of fees is not justified, and Plaintiff's claim for the same should be dismissed.

## CONCLUSION

WHEREFORE, Defendant respectfully requests that the instant Motion to Dismiss, or in the Alternative for Summary Judgment, be GRANTED.

Respectfully submitted,

Erek L. Barron
United States Attorney

      */s/*
Melissa E. Goldmeier (Bar No. 18769)
Assistant U.S. Attorney
U.S. Attorney's Office, District of Maryland
36 S. Charles Street, 4th Fl.
Baltimore, MD 21201
melissa.goldmeier@usdoj.gov
(410) 209-4855

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was served via the Court's ECF system to all counsel of record.

                                                                                                   */s/ Melissa E. Goldmeier*
                                                                                                   Melissa E. Goldmeier